UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CARRIE LOOMIS, as Trustee of the LOST CREEK TRUST<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA<br><br>    Defendant. | Case No. 2:22-cv-00099-RCT<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

This case turns on a question that has already been resolved in federal forfeiture proceedings: who owned the Winch Road Property in North Idaho? That property was encumbered by IRS tax liens arising out of unpaid taxes owed by Christopher Close. After Close was convicted of federal fraud crimes and money laundering, the property was ordered forfeited to the United States pursuant to 21 U.S.C. § 853. It was later sold, and some of the proceeds of the sale were paid to the IRS to satisfy Close's tax debts. Carrie Loomis, the Trustee of the Lost Creek Trust (the "Trust"), now claims that the Trust (rather than Christopher Close) was the real owner of the Winch Road Property. The Trust brought this suit seeking a refund of improperly collected taxes under 28 U.S.C. § 1346(a)(1), and the United

States has now filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No. 3.)  After reviewing memoranda filed by both parties, the litigation in three separate courts spanning nearly two decades, and affording oral argument on November 21, 2021, the matter is ready for decision. Because this Court and the Ninth Circuit Court of Appeals have already decided the Trust had no legal interest in the Winch Road Property, the Defendant's motion to dismiss is **GRANTED.**

## BACKGROUND

### I.  Criminal Proceedings Against Christopher Close

In 2003, a criminal indictment was filed in the District of Idaho against Christopher Close, who is not a party to this case.  Close was charged with a wide variety of criminal offenses in 92 counts, including health care fraud, money laundering, and obstruction.  *See* Judgment, Sentence, and Preliminary Forfeiture Order at 1, *United States v. Christopher Close*, No. 2:03-cr-00069 (D. Idaho, March 11, 2005), Dkt. No. 176 ("PFO").  Close was found guilty by a jury in 2004 of most of the charges.  *Id*. at 8.  The United States also sought criminal forfeiture of Close's property, including a valuable piece of real estate comprising approximately 767 acres located in Rathdrum, Idaho (the "Winch Road Property").[1]  *Id*. at 9–10.

---

[1] The Trust's complaint describes the Winch Road Property as "consisting of approximately 767 acres."  (Pl.'s Compl. ¶ 4, Dkt. No 1.)  Filings and orders from

In December of 2004, a second bench trial was held on the issue of forfeiture. The United States requested this Court include the Winch Road Property as substitute property in the preliminary forfeiture order because some property was "no longer available for forfeiture due to acts or omissions of [Close.]" *Id*. In 2005, this Court (Hon. Edward J. Lodge) entered a preliminary order of forfeiture against Close that included the Winch Road Property. *Id*. at 15–19. Judge Lodge found that Close "has an interest in [the Winch Road Property], even though [Close] caused the property to be held in the name of a third-party entity ("Lost Creek Irrevocable Trust")." *Id*. at 10.

The Lost Creek Trust[2] — the plaintiff in this action — filed a petition initiating an ancillary forfeiture proceeding under 21 U.S.C. § 853(n)(6), arguing it had an interest in the property.[3] *See* Amended Order at 3–4, *United States v. Christopher Close*, No. 2:03-cr-00069 (D. Idaho, Nov. 30, 2016), Dkt. No. 376. The

_____

*United States v. Close* describe it as the "750-acre Property." *See, e.g.,* PFO at 3. While the acreage is approximate, counsel confirmed at oral argument that the properties in question are one and the same. To avoid confusion, this decision will describe the real estate at issue as the "Winch Road Property" and substitute that description where appropriate in quoting orders from prior proceedings.

[2] Counsel for the Trust confirmed at oral argument that the "Lost Creek Trust" and the "Lost Creek Irrevocable Trust" are the same entity.

[3] Carrie Loomis, the current Trustee of the Lost Creek Trust, is Mr. Close's sister. Loomis was not the Trustee at the time of the initial § 853(n) forfeiture proceedings, but unsuccessfully sought to intervene on behalf of four of the Trust's eight beneficiaries. *See* Amended Order at 3 n.5, *United States v. Christopher Close*, No. 2:03-cr-00069 (D. Idaho Nov. 30, 2016), Dkt. No. 376.

MEMORANDUM DECISION AND ORDER - 3

Trust argued the Winch Road Property should not be forfeited because Mr. Close had sold or given the property to the Trust and was therefore no longer the owner. *Id*. at 11–12.  For reasons that are unclear, the Court did not immediately rule on the Trust's § 853(n) petition.

## II.    *Close v. Commissioner of Internal Revenue (Close I)*

In 2007, the IRS alleged Close had failed to pay taxes on income derived from logging operations he conducted on the Winch Road Property.  *Close v. Commissioner*, 107 T.C.M. (CCH) 1124 (Feb. 10, 2014) ("*Close I*").  The IRS alleged that the Lost Creek Trust was a sham.  Because the IRS failed to assert that claim in its initial notice of deficiency, the Tax Court concluded the IRS had the burden of establishing the Trust was a sham.  *Id*. at *27.  In a memorandum opinion, the Tax Court found the IRS had failed to make that showing under federal tax law. *Id*. at *34.  The Tax Court concluded by criticizing the government's failure to adequately prepare for and litigate the case:

> This case would have benefited from a more fully developed record regarding the creation, funding, and administration of Lost Creek Trust. . . . This case would also have benefited from the earlier assertion and development of respondent's sham trust theories. Unfortunately, respondent chose to rely on actions taken in connection with Mr. Close's criminal case and particularly the Government's misguided attempt to position itself for an easy forfeiture of the trust['s] assets. The resulting product was poorly developed and unconvincing.

*Id*. at *47.  The IRS did not appeal.  (Compl. ¶ 6.)

### III.   Ancillary Proceedings Under § 853(n) (*Close II*)

In 2016, Judge Lodge finally granted the government's motion to dismiss and motion for summary judgment on the Lost Creek Trust's § 853(n) petition.   *See* Amended Order, *United States v. Christopher Close*, No. 2:03-cr-00069 (D. Idaho, Nov. 30, 2016), Dkt. No. 376 ("*Close II*").   The Court first held that the Tax Court's decision did not have any preclusive effect in the forfeiture proceedings both because the District Court's preliminary order of forfeiture in 2005 (entered prior to the initiation of the Tax Court proceedings) had already determined that Close had a forfeitable interest in the property and because the Tax Court's decision was limited to determining Close's income tax liability.   *Id*. at 10–11.   Judge Lodge also noted that the question of whether the Trust was valid is distinct from the issue of whether the Trust had an interest in the Winch Road Property.   *Id*. at 16 n.15.

The 2016 decision then granted the government's motion to dismiss and for summary judgment because the Trust had failed to show any valid ownership interest in the Winch Road Property under Idaho law.   First, Judge Lodge held the Trust had failed to allege an interest in the property because:

> [T]he [Winch Road] Property was not gifted to the Trust. Neither at the time of the Trust's creation, on February 28, 2003, nor when the purchasing documents were executed on March 27, 2003, did delivery of the Property as a gift ever become complete because Mr. Close and

Mr. Leach[4] did not relinquish all present and future domination and control of the Property. Instead, Mr. Close and Mr. Leach always retained possession and the exclusive right to manage and use the Property for timber operations. As evidenced by the Declarations of Mr. Dixon, Mr. Leach, and Ms. Smith, the Trustees never managed, possessed, used, or controlled the Property. . . .

While the Trust document purports to transfer all of Mr. Close and Mr. Leach's interest in the Property to the Trust, the facts alleged show that Mr. Close and Mr. Leach, not the Trustee, continued to exercise dominion over the Property. Thus, Mr. Close never relinquished dominion and control over the Property. For these reasons, the Petitioner's claim that the [Winch Road] Property was a gift fails.

*Id*. at 13–15.  The Court further ruled that the Trust failed to allege an interest in the Winch Road Property both because Close never relinquished control over it and because any such transfer was a fraudulent effort by Close to conceal his assets from the reach of creditors, including the government:

[T]he Court concludes that Mr. Close's purported transfer of the Property to the Trust was fraudulent. Therefore, any claim in the Petition relying upon that transfer as a basis for arguing the Petitioner has a legal interest in the Property is denied. Even if the transfer was not fraudulent, the Petitioner's claim fails because the transfer was never completed since Mr. Close retained dominion and control over the property. That is to say, the Trustee, and therefore the Petitioner as the successor trustee, held only nominal title to the Property but has no valid legal interest because actual ownership was never passed.

---

[4] According to the 2016 order, Mike Leach executed the purchase option on the Winch Road Property along with Close and later signed documents creating the Lost Creek Trust. *Close II* at 21.  Leach later averred that Close's intention in signing these documents was to keep the property out of his own name. *Id*. at 24.

*Id*. at 15.  Then, in granting the United States' motion for summary judgment, Judge

Lodge analyzed at length the evidence showing that Close's transfer of his interest

in the property to the Trust was fraudulent under Idaho Code §§ 55-913 and 55-914:

> The undisputed facts in this case show the transfer of the [Winch Road] Property was fraudulent because Mr. Close had the actual intent to hinder, delay, or defraud creditors as evidenced by the presence of several unexplained badges of fraud as well as other factors.
>
> Mr. Close knew he was being investigated for fraud well before he purchased the [Winch Road] Property and he structured his dealings with the Property to conceal his interest in the Property from the Government and his creditors. On June 18, 2001, approximately 18 months prior to the purchase, Mr. Close knew he was under investigation for health care fraud because he was interviewed by law enforcement. On November 17, 2001, a year before the purchase, federal search warrants were executed on Mr. Close's airplane hangar and the premises of his former business from both of which several records were seized.
>
> Knowing of the federal fraud investigation for over a year, on January 20, 2003, Mr. Close and Mike Leach entered into the Purchase Option to each purchase a 50% interest [in] the [Winch Road] Property. On January 30, 2003, Mr. Close and Mr. Leach provided notice that they were exercising the option to buy. Less than a month later, on February 28, 2003, Mr. Close and Mr. Leach created the Lost Creek Trust and executed a document purporting to convey their interests in the [Winch Road] Property to the Trust. The beneficiaries of the Trust were Mr. Close's and Mr. Leach's children. The named Trustee was a close friend of Mr. Leach and the successor co-Trustee was Mr. Close's sister [Carrie Loomis]. Shortly after the creation of the Trust, on March 12, 2003, the Indictment in this case was filed charging Mr. Close with 92 counts of health care fraud, money laundering, and criminal forfeiture for conduct beginning in 1998 and continuing through 2003. Days later, on March 27, 2003, the Mortgage Note, Real Estate Mortgage, and Warranty Deed for the [Winch Road] Property were all executed and recorded purporting to convey and deed the Property to the Lost Creek Trust. Mr. Close was not named in any of those documents. . . .

The Court finds Mr. Close's dealings with regard to the [Winch Road] Property unmistakably show "suspicious circumstances" overhang these transactions and the presence of most of the badges of fraud. . . .

Specifically, the [Winch Road] Property was transferred to insiders via the Trust benefitting his children and naming close friends and relatives as trustees; Mr. Close and  Mr. Leach retained possession and control of the Property after the transfer; Mr. Close concealed the transfer and his interest/ownership of the Property; Mr. Close knew he was under investigation prior to the purchase of the Property and had been indicted just days prior to the Property being deeded to the Trust; the transfer of the [Winch Road] Property was substantially all that remained of Mr. Close's assets; the purpose of the manner in which the Property was transferred was to conceal Mr. Close's interest in the Property; Mr. Close denied having any interest in the Property during his criminal case, no reasonably equivalent value was received from the Trust in exchange for the transfer of Mr. Close's interest; Mr. Close was insolvent before and after the transfer given his debts exceeded his assets and he failed to pay his debts as they came due; and the transfer occurred shortly before Mr. Close incurred a substantial debt resulting from his criminal trial and his payment obligations on the [Winch Road] Property. Petitioner has failed to come forward with any explanation for these suspicious circumstances surrounding the transfer so as to give rise to a genuine issue of material fact that the transfer was not fraudulent.

*Id*. at 20–24.  The Court concluded that the Trust had "failed to show any valid legal right, title, or interest in the [Winch Road Property]" and dismissed the Trustee's § 853(n) petition.  *Id*. at 26–27.

## IV.    Appellate Review of § 853(n) Proceedings (*Close III*)

The Trust then sought review of Judge Lodge's decision in the United States Court of Appeals for the Ninth Circuit.  *United States v. Close*, 755 Fed. App'x 626, 627 (9th Cir. 2018) ("*Close III*").  In an unpublished memorandum decision, the

Ninth Circuit affirmed and held that the Tax Court's ruling "did not warrant application of res judicata to the criminal forfeiture ancillary proceeding." *Id.* at 629. The Ninth Circuit further found the District Court had correctly determined that under Idaho law, the "Lost Creek Trust did not obtain the Winch Road Property by gift," and that "the undisputed facts and documents in evidence show [Close] obtained an interest in the Winch Road Property when he executed the option to purchase the property, and he fraudulently transferred his interest to Lost Creek Trust." *Id.*

## V.    The Instant Litigation

After forfeiture proceedings had concluded, the Winch Road Property was sold by the United States Marshals Service to satisfy the criminal judgments, fines, and restitution owed by Close in the criminal case. (Compl. ¶ 4.) Because Close also owed the IRS back taxes, the Winch Road Property was encumbered by tax liens at the time of the sale.[5] (Compl. ¶ 5.) When the property was sold, the IRS was paid $224,557.53 by the Clerk of the Court to satisfy Close's tax obligations. (Compl. ¶ 7.) Also deducted from the proceeds of the sale were interests held by third parties (including a mortgage interest and taxes owed to Kootenai County) and closing costs and fees associated with the sale. *See* Notice of Sale at 3, *United States*

---

[5] The tax liens dated from "2000 and before." (Compl. ¶ 5.) Their validity was not at issue in *Close I*, which dealt with Close's tax debts from 2003 and 2004.

*v. Christopher Close*, No. 2:03-cr-00069 (D. Idaho. Dec. 17, 2019), Dkt. No. 451. Close himself received the net proceeds of $841,831.11 after those payments were deducted. *See* Order Directing Payment at 1, *United States v. Christopher Close*, No. 2:03-cr-00069 (D. Idaho, Dec. 19, 2019), Dkt. No. 452.

The Trust then brought this civil action, alleging once again that the Trust (rather than Close) was the true owner of the Winch Road Property. (Compl. ¶ 1.) The Trust seeks a refund in the case at bar only as to the proceeds of the sale used to pay Close's tax liens on the theory that "the IRS cannot collect taxes from the sale of real property in which the person owing the tax has no interest." (Compl. ¶ 11.)[6] The United States responded by filing a motion to dismiss under FRCP 12(b)(1) and 12(b)(6). The United States argues this Court lacks subject matter jurisdiction because the Trust's claims are barred by sovereign immunity and the Trust failed to exhaust administrative remedies. (Def.'s Mem. Supp. Mot. Dismiss 5–10, Dkt. No. 3-1). It also argues the Trust is barred from asserting an interest in the Winch Road Property because that issue has, as a matter of law, already been litigated and decided against it.[7] (*Id*. 14–16.)

---

[6] The Trust had also claimed the IRS could not enforce the tax liens against Close because they were more than ten years old but abandoned that argument in briefing. (Pl.'s Resp. 16, Dkt. No. 7).

[7] The government's motion to dismiss uses the term "res judicata." (Def.'s Mem. 16.) Res judicata encompasses both claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Issue preclusion is the relevant doctrine in

# ANALYSIS

## I.     Legal Standards

### A. Failure to State a Claim Under Rule 12(b)(6)

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  In assessing the sufficiency of a complaint on a motion to dismiss, the Court must "accept all of the factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  However, the Court need not accept legal conclusions as true, even if they are "couched as a factual allegation." *Ashcroft*, 556 U.S. 662 (quoting *Twombly*, 550 U.S. at 555).  Similarly, the Court need not accept as true allegations which contradict a matter that is properly subject to judicial notice.  *In re Gilead Sci. Sec. Lit.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

---

this case, because it "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001).  The Trust properly understood the government's motion to dismiss as referring to issue preclusion and argued against its application in opposition.  (Pl.'s Resp. 15, Dkt. No. 7).

### B. Judicial Notice

In assessing the sufficiency of the pleadings "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322.  A Court may take judicial notice on the motion of a party or on its own motion.  Fed. R. Evid. 201(c). Courts may judicially notice a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Additionally, "a court may take judicial notice of its own records in other cases" as well as records from other courts. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### II.   Judicial Notice of Prior Decisions

In evaluating the sufficiency of the Trust's complaint under Rule 12(b)(6), the Court will take judicial notice of three prior decisions.  First, the Court will take judicial notice of *Close v. Commissioner*, 107 T.C.M. (CCH) 1124 (Feb. 10, 2014) ("*Close I*"), because that decision is incorporated into the plaintiff's complaint by reference.[8]  (Compl. ¶ 6.)  Second, the Court will take judicial notice of its own prior ruling entered by the Honorable Edward J. Lodge adjudicating the Trust's § 853(n)

---

[8] Plaintiff's unopposed motion for judicial notice (Dkt. No. 8) is GRANTED.

petition in *United States v. Christopher Close*, No. 2:03-cr-00069 (D. Idaho, Nov. 30, 2016), ECF No. 376 ("*Close II*").  Third, the Court will take judicial notice of the Ninth Circuit's memorandum disposition affirming that ruling.  *United States v. Close*, 755 Fed. App'x 626, 627 (9th Cir. 2018) ("*Close III*").

This Court will also take judicial notice of several prior filings and orders entered in *Close II*, including the docket of that case, the previously referenced Judgment and Preliminary Forfeiture Order ("PFO") entered by Judge Lodge on March 11, 2005 (Dkt. No. 176), the Notice of Sale filed by the United States on December 17, 2019 (Dkt. No. 451), and the Court's order directing surplus payment to Close from net revenues of that sale entered on Dec. 19, 2019.  (Dkt. No. 452).

### III.   Subject Matter Jurisdiction

The United States argues that the Trust's complaint fails under Rule 12(b)(1) for lack of subject matter jurisdiction because its claim for a refund must be brought under 26 U.S.C. §§ 6325(b)(4) and 7426(a)(4) instead of 28 U.S.C. § 1356(a)(1) and because the Trust's administrative claim for a refund was defective.  (Def.'s Mem. 7, 10.)  The Trust disputes this interpretation of the relevant statutes and argues that the construction urged by the United States would violate the Trust's constitutional rights.  (Pl.'s Resp. 1–10.)  It also argues that any defects in the Trust's claim for a tax refund are saved by the informal claim doctrine.  (*Id*. 10–14.)  Because the Court

finds that the Trust's claim is barred in any event by issue preclusion, it need not reach the merits of these arguments.

The Court has discretion to dismiss a matter on issue preclusion grounds without deciding an underlying question of subject matter jurisdiction if the "jurisdictional issues would have been 'difficult to determine' such that . . . invoking issue preclusion [is] 'the less burdensome course.'" *Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 861 (9th Cir. 2021) (quoting *Sinochem Int'l. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007)).  "Under such circumstances, judicial economy is served by . . .  dismissing on a clear, non-jurisdictional, non-merits ground rather than wading into murkier jurisdictional issues." *Id*. at 863.

Here, resolving the parties' arguments about subject matter jurisdiction would require the Court to engage in an "arduous inquiry" involving difficult questions of statutory interpretation, constitutional law, and administrative exhaustion.  *See id* (citation omitted).  But if the Trust's assertion of a legal interest in the Winch Road Property is barred by issue preclusion, it cannot receive a refund of the amount paid to satisfy Close's tax liens regardless of whether it has filed the proper form with the IRS and filed suit under the proper statute.  Given that litigation relating to the forfeiture proceedings in *Close II* has languished in this district for nearly two decades, the Court finds that judicial economy is best served by resolving this matter on issue preclusion grounds.  Accordingly, the Court declines to rule on the United

States' subject matter jurisdiction arguments because it finds that deciding this case on issue preclusion grounds is the less burdensome course.

## IV.    Issue Preclusion/Collateral Estoppel

Issue preclusion, also known as collateral estoppel, "promote[s] judicial economy by preventing needless litigation." *Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040–41 (9th Cir. 2017). The party asserting issue preclusion must show that "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Id*. at 1041; *Snoqualmie Indian Tribe*, 8 F.4th at 864; *see also In re Berr*, 172 B.R. 299, 306 (B.A.P. 9th Cir. 1994).[9]

---

[9] Generally, issue preclusion and claim preclusion are affirmative defenses pled in an answer under Rule 8 rather than asserted via a motion to dismiss under Rule 12(b)(6). *See* Fed R. Civ. Proc. 8(c) (listing "estoppel" and "res judicata" as affirmative defenses); *Rotec Indus., Inc., v. Mitsubishi Corp.*, 348 F.3d 1116, 1119 (9th Cir. 2003) (discussing claim preclusion). However, the United States argues that the Trust's interest in the Winch Road Property has been resolved as a matter of law, and courts may resolve a motion to dismiss on preclusion grounds under Rule 12(b)(6) where the defense "raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377 (9th Cir. 1984); *see also Phillips 66 Co. v. Sacks*, 409 F. Supp. 3d

## A. Issue Preclusion Against the United States

The Trust's complaint relies on offensive nonmutual[10] issue preclusion, which bars "a defendant from relitigating the issues which a defendant previously litigated and lost against another plaintiff." *Syverson v. Int'l Bus. Mach. Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (quoting *Parkland Hosiery*, 439 U.S. at 329). The Trust's complaint alleges that because the Tax Court in *Close I* ruled that the Trust (rather than Christopher Close) owned the property, the United States is "collaterally estopped to argue that Close ever owned the Winch Road Property and to deny that Plaintiff was the owner of the Winch Road Property." (Compl. ¶ 6.)

Different standards apply to the use of defensive issue preclusion and offensive issue preclusion. Even when all the prerequisite elements for *defensive* issue preclusion are met, trial courts have "broad discretion" to "take potential shortcomings or indices of unfairness into account when considering whether to

---

972, 987–92 (W.D. Wash. 2019); *Wooley v. Martel*, 2011 WL 350429, *3–4 (E.D. Cal. Feb. 2, 2011) (granting motions to dismiss on issue preclusion grounds).

Additionally, Ninth Circuit and Supreme Court precedent are clear the Court has authority to raise issue preclusion *sua sponte. Rodriguez v. City of San Jose*, 930 F.3d 1123, 1132 (9th Cir. 2019); *Dismone v. Browner*, 121 F.3d 1262, 1267 (9th Cir. 1997); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 231 (1995). The Court would do so here because (1) after almost 20 years of litigation, judicial economy weighs strongly in favor of doing so; (2) the Trust opted to brief and argue the merits of issue preclusion; and (3) after taking judicial notice of prior decisions, the Court has everything it needs to rule on the defense.

[10] Here, the application of issue preclusion would be "nonmutual" because the plaintiff in *Close I* was Christopher Close and the plaintiff here is the Trust.

apply offensive nonmutual issue preclusion." *Id*. at 1078 (internal quotation marks omitted); *see also SEC v. Stein*, 906 F.3d 823, 831 (9th Cir. 2018).  In particular, the Supreme Court has suggested that "offensive [issue preclusion] may . . .  be unfair to a defendant if the judgment relied upon as a basis for the [preclusion] is itself inconsistent with one or more previous judgments in favor of the defendant." *Parklane Hoisery*, 439 U.S. at 331–32.

Here, the Trust fails to allege that ownership of the Winch Road Property "was actually litigated and decided" by the Tax Court in *Close I*.  *Howard*, 871 F.3d at 1041.  An issue is "actually litigated" when it is "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined."  Restatement (Second) of Judgments § 27 cmt. d. (Am. L. Inst. 1982).  The complaint alleges the Tax Court "determined that Plaintiff and not Close was the owner of the Winch Road Property."  (Compl. ¶ 6.)  But the Tax Court never decided that issue.  While the Commissioner did assert to the Tax Court that the "Lost Creek Trust is invalid under State law," the Tax Court explicitly declined to address that argument because the government had asserted it for the first time in briefing.  *Close I* at *20.  Then, after "[a]ssuming that Lost Creek Trust was validly formed," the Tax Court held that the Commissioner had "failed to prove that this is the 'extreme case' requiring [that the court] disregard an entity valid under State law."  *Id*. at *33–34.  In other words, the

Tax Court never actually decided the issue of who owned the Winch Road Property because the government failed to properly raise it.[11]

Even if the issue of who owned the Winch Road Property under Idaho law had been actually litigated and decided in the Tax Court, the Court finds that offensive issue preclusion against the government would be unfair here. The Tax Court's decision was itself inconsistent with the prior criminal proceedings against Close, where this Court had in 2005 already entered a preliminary order of forfeiture finding that Close was the owner of the Winch Road Property despite his efforts to transfer title to that property to the Lost Creek Trust. *See* PFO at 9–10. Thus, this appears to be a paradigmatic example of a case where offensive nonmutual issue preclusion is inappropriate because the "judgment relied upon as a basis for the [preclusion] is itself inconsistent with one or more previous judgments in favor of the defendant." *Parklane Hoisery*, 439 U.S. at 331–32.

## B. Issue Preclusion Against the Trust

The United States asserts that the Trust is barred from again claiming that the Trust owned the Winch Road Property because that issue was litigated and decided

---

[11] While this Court finds that the Tax Court's ruling has no preclusive effect, it shares that court's frustration with the government's apparent failure to properly prepare for and litigate the tax court case. Litigation relating to forfeiture proceedings in *Close II* has stretched on for nearly two decades, and the government's procedural failures in Tax Court have now resulted in new lawsuits and added years of litigation which otherwise could have been avoided.

in *Close II*.  (Def.'s Mem. 15–16.)   As evidence, it cites this Court's decision in *Close II* and the Ninth Circuit's memorandum affirming that decision in *Close III*. (*Id*.)  The parties do not dispute that the Trust's interest in the Winch Road Property was fully and fairly litigated in *Close II*, nor does either party dispute that the decision in *Close II* was a final judgment.  However, the Trust disputes two prongs of the test for collateral estoppel: it contends that the issues in *Close II* and this proceeding are not identical and further contends that the issue of the Trust's interest in the property was not necessary to decide the merits of the forfeiture proceeding. (Pl.'s Resp. 15–16.)  The Court thus addresses each argument in turn.

### 1.  Identical Issue

In determining whether the issue in two proceedings is identical for purposes of issue preclusion, the Ninth Circuit has directed courts to consider four factors:

> (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
> (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?
> (3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?
> (4) how closely related are the claims involved in the two proceedings?

*Howard*, 871 F.3d at 1041 (citations omitted). The factors are not applied mechanically.  *Id*.  Here, three of the four factors weigh strongly in favor of finding that the issues are identical.

First, there is substantial overlap between the evidence and arguments at issue in each proceeding.  In *Close II*, the Trust argued it had a "legal interest" in the Winch Road Property under Idaho law and argued the property should not be seized to satisfy Close's legal obligations.  *Close II* at 10.  Here, the Trust advances essentially the same argument, asserting that it "was the owner of" the Winch Road Property and that the government wrongly used proceeds from the sale of that property to satisfy Close's obligations.  (Compl. ¶¶ 1, 4, 6, 7.)  This is the exact same argument previously presented to Judge Lodge and the Ninth Circuit and on which the Trust lost.  The only difference here is chronology: at this point, the property has now been sold and Close's debts have been satisfied.  This factor strongly weighs in favor of finding the issues are identical.

Second, the outcome of this case would turn on application of the same rules of law applied by this Court in *Close II*.[12]  The Trust asserts that it was the "owner" of the Winch Road Property, and that tax liens therefore should not have been placed on the property to satisfy Close's personal obligations.  (Compl. ¶¶ 1, 7.)  Ownership of property for purposes of determining the validity of a federal tax lien is a question of state law.  *See Aquilino v. United States*, 363 U.S. 509, 512–13 (1960).  Similarly,

---

[12] It makes no difference that the forfeiture proceedings were ancillary to a criminal prosecution.  As Judge Lodge observed, an ancillary proceeding under § 853(n) "is essentially a civil matter" and motions to dismiss and for summary judgment are governed by the same standards that would apply under the Federal Rules of Civil Procedure.  *See Close II* at 8–10.

in a proceeding under § 853(n), state law determines whether a petitioner has an interest in the property. *United States v. Hooper*, 229 F.3d 818, 820 (9th Cir. 2000). In *Close II*, Judge Lodge previously applied Idaho state law in determining that the Trust had no standing to challenge the forfeiture because it had no legal title or interest in the property. *See Close II* at 11–17. This factor therefore also strongly weighs in favor of finding that the issues are identical.

Third, pretrial discovery and preparation for the ancillary civil forfeiture proceeding in *Close II* could reasonably have been expected to embrace the issue of whether the Trust owned the Winch Road Property. Indeed, Judge Lodge denied the Trust's § 853(n)(6) petition in *Close II* over ten years after Close fraudulently tried to convey the property to the Trust in 2003. *Id.* at 16–17. The Trust understood that it needed to demonstrate a legitimate interest in the property under state law to prevail in the forfeiture proceeding, which is why it argued that Close had either given or sold the property to the Trust. *Id.* Finally, each instrument Close allegedly used to convey his interest in the property to the Trust was part of the record and carefully considered by Judge Lodge and soundly rejected in *Close II*. *Id.* at 4–6. Thus, this factor also strongly weighs in favor of finding that the issues are identical.

Only the fourth factor—whether the claims in each case are "closely related"—cuts against a finding that the issues are identical. To prevail in *Close II*, the Trust had to show that it had an interest in the Winch Road Property and that it

was either a "bona fide purchaser[] for value without notice" of Close's illegal conduct or that the Trust owned the property at the time Close committed his crimes. *See* § 853(n)(6); *Hooper*, 229 F.3d at 821.  By contrast, 28 U.S.C. § 1346(a)(1) authorizes civil actions against the United States "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." These claims are not "closely related" so this factor weighs against finding that the issues are identical.  But of course, if this factor alone were dispositive, issue preclusion and claim preclusion would be the same doctrine — and they are not.  *See Howard*, 871 F.3d 1040–41.

The Trust argues that because the Tax Court decision in *Close I* was not given preclusive effect in *Close II* or *Close III*, it follows that the issues in the forfeiture proceeding and in "tax matters" are not the same. (Pl.'s Resp. 15.)  But this is simply incorrect.  If the *Close I* court did not decide the issue of whether the Trust had a legal interest in the Winch Road Property, but the *Close II* court did, the latter decision may have preclusive effect even if the former does not.  As *Howard* teaches, whether the issue decided in one case is identical to that decided in another necessarily turns on the circumstances of each case.  *See* 871 F.3d at 1041–44. Having considered the factors set out in *Howard*, the Court now holds that the issue decided in the *Close II* forfeiture proceeding—whether the Trust had a cognizable interest in the Winch Road Property—is identical to the issue presented in this case.

## 2.  Necessary to Decide the Merits

The Trust also argues that determining whether the Trust had an interest in the Winch Road property was not necessary to adjudicating the § 853(n) petition because "the finding that the transfer was fraudulent obviated any need to determine who owned the property."  (Pl.'s Resp. 16.)  This is incorrect as a matter of law. While a showing of an interest in the property at issue is not *sufficient* to prevail in a petition filed under § 853(n), such a showing is in fact necessary.  § 853(n)(2) ("Any person . . . *asserting a legal interest* in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to *adjudicate the validity of his alleged interest* in the property." (emphasis added)).  Indeed, a petitioner like the Trust lacks Article III standing to even challenge a forfeiture unless it can show a colorable interest in the property at issue. *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637 (9th Cir. 2012).

Additionally, as the United States argues, the District Court's finding that Close's putative transfer of the Winch Road Property to the Trust was fraudulent necessarily means the Trust's complaint has failed to assert any cognizable legal interest in the property.  (Def.'s Reply 9, Dkt. No. 12).  Other than the Tax Court ruling in *Close I* (which, as discussed, never decided whether the Lost Creek Trust was validly formed under state law) the Trust's complaint asserts no other factual

basis by which this Court might find that the Trust was the actual owner of the Winch Road Property.  (Compl. ¶¶ 1, 6.)  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (cleaned up).

## V.    Conclusion

Because this Court has already ruled that the Lost Creek Trust had no legal interest in the Winch Road Property, a decision previously affirmed on appeal, and because the Trust has asserted no other facts in support of its alleged ownership of the property at the time it was sold to satisfy the tax liens at issue, the Trust's claim for a tax refund under 28 U.S.C. § 1346(a)(1) is barred as a matter of law by the doctrine of issue preclusion.

## ORDER

**IT IS HEREBY ORDERED:**

1.    The United States' Motion to Dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6) is **GRANTED.**

2.    The Lost Creek Trust's Complaint is **DISMISSED** with prejudice.

3.    The Clerk shall enter final judgment for the United States and administratively **CLOSE** this case.

DATED: November 23, 2022

Richard C. Tallman
United States Circuit Judge